UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Pramco II, L.L.C.,             )
          Plaintiff        )
                          )
                          )       Case No. 02-1248
                          )
Edward E.Childers,        )
          Defendant    )

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the Plaintiff's Supplemental Motion for Summary Judgment (Doc. #30). The Motion is fully briefed and I have carefully considered the parties' arguments. For the following reasons, the motion is denied.

**JURISDICTION**

When this case was filed, the plaintiff was LPP Mortgage Ltd, the holder of the Note at issue in this litigation. Based on allegations in the original complaint, this court proceeded under diversity jurisdiction. In recent pleadings, however, the defendant has challenged the jurisdictional assertions as to LPP Mortgage, the original plaintiff, and PRAMCO II, the current plaintiff.

LPP Mortgage, no longer a party hereto, has provided an affidavit (Doc. #34) that establishes affirmatively that the corporate general partner and corporate limited partner in LPP Mortgage at the time this litigation was filed were incorporated under the laws of Texas and Nevada and had their principle places of business in those states. The affidavit also states that at no time during LPP Mortgage's involvement in this case was any general

or limited partner a citizen of Illinois.  Defendant is and at all times was a citizen of Illinois. The citizenship of the parties was therefore diverse at the time the lawsuit was filed and it remained diverse throughout LPP Mortgage's participation.

The Current owner and holder of the Note in issue, however, is not LPP Mortgage. LPP Mortgage sold the note to PRAMCO II, LLC on May 26, 2004.  PRAMCO II has filed an affidavit showing that it has two members: Midwest, Inc. and CFSC Capital Corp. II. Midwest Inc. was incorporated under the laws of Missouri and has its principle place of business in Missouri.  CFSC Capital Corp. II is incorporated under the laws of Delaware, and its principle place of business is in Minnesota.  The Defendant is a citizen of Illinois. The citizenship of the current parties is therefore diverse.

The Note in issue is for $415,000.  Although there have been a few payments and/or applications of collateral to the loan balance, the amount demanded by Plaintiff, consisting of the loan balance plus interest and various service fees, is alleged to be more than $350,000, well above the jurisdictional amount of $75,000.

The court therefore has and at all times has had diversity jurisdiction over the subject matter of this dispute.

## DISCUSSION

This suit involves a dispute about efforts to collect on a promissory note ("Note") dated September 11, 1990, for the amount of $415,000.00.  On or about September 11, 1990, a loan in the principle amount of $415,000.00. was made to defendant Edward E. Childers in connection with Defendant's restaurant business.  The debt was guarantied by the Small Business Administration (SBA).  In connection with the loan, a Promissory Note was signed by Childers and his partner.   The loan was made by a Small Business

2

Administration Certified Development Company known as PEORIA 502/503, INC.  The Note provided that it and related collateral would be assigned to the SBA to secure the SBA's guaranty of the loan.  The Note and all supporting documents were in fact assigned to SBA.  Thereafter, SBA assigned the Note and all corresponding documents to LPP Mortgage.  During the course of this litigation, LPP Mortgage assigned the Note  to the current plaintiff, PRAMCO II, on May 26, 2004.  The Note was also secured by a Security Agreement, in which certain collateral (second liens on the real estate and on the restaurant assets) secured the Note.  The Note was payable in equal monthly installments at a definite time, with a final payment due in October 2012.  Childers ceased making payments on the Note at a date uncertain.[1]  In 1995, the collateral securing the loan was sold, netting $50,000, which was applied to the outstanding balance on April 12, 1995.  No payments of any kind have been made since that date.

Before the collateral was sold, Childers had been meeting with an SBA loan officer named Alan Kilgore.  Kilgore filled out an SBA form called a "Modification," on September 19, 1994.  He noted the various modifications and accommodations that had been made with respect to payments under the Note, concluding that the debenture should be purchased at the earliest possible opportunity by SBA which should assume servicing responsibility for the loan.  His recommendation was approved by an Assistant Branch Manager, D.L. Meadors.

---

[1]At various times, the parties have indicated that the last payment was made sometime in 1991.  One of the SBA forms ("Modification", discussed further below) indicates that the last payment was made in March of 1994.

On February 23, 1995, Kilgore and Meadors signed off on another form that contains several pertinent pieces of information. First, it states that no demand letters had been sent as of the date of the form. Second, it comments that Childers and his partner had made an offer to compromise the liability under the note, an offer that was "presently under review." Third, Kilgore recommended (and Meadors approved) that the account be transferred "to liquidation." According to Kilgore, "liquidation status" was an internal SBA term designating a non-performing loan. Once a loan was placed in liquidation status, the loan officer had some flexibility to negotiate restructuring of the loan or compromise settlement of the loan, in addition to setting the file up for sale of collateral if necessary.

According to Childers[2], however, he met with Kilgore on several occasions between April 12 and July 23, 1996. He states that he "understood that SBA was asserting that the entire amount of my obligation due SBA was then payable. In other words, I understood that the SBA was claiming that I must immediately pay the whole amount of the promissory note." He bases this understanding on "one or more" written communications he received from SBA that were in the possession of his attorney at the time. He has not produced these documents for the court because his former attorney is deceased.

Another SBA Modification form dated 6/13/95 was signed by Meadors (and a Loan Servicing Assistant named Carol Bridgewater). That form indicated that the Note was "in liquidation" as of February 23, 1995. This form was for the purpose of making a UCC filing continuing the financing statement at the Peoria County Recorder.

---

[2]Childer's Affidavit was attached to his Response (Doc. #22) to plaintiff's previous motion for summary judgment as Exhibit 8.

On Nov. 6, 1996, Kilgore sent a letter to Childers and his partner, inviting them to re-open discussions about "how to resolve the liability issue in a mutually satisfactory manner.  At no time did Kilgore send a letter, form or other communication demanding payment in full.  Kilgore also kept notes about this file, and those notes indicate that at least through October 24, 2000, no demand letter had been sent.  To the contrary, through the end of 1999, the notes indicate continued negotiations about resolving this matter.

In his dealings with Kilgore, Childers signed an agreement acknowledging the underlying debt and the Note, agreed that they were not extinguished by the application of the collateral sales process, and agreed that the SBA retained all of its legal remedies to collect on the Note.  No further payments have been made, and the principle balance alleged to be still due and owing is $354,869.52; interest and various fees and costs continue to increase that amount.

The issue in this case is whether this litigation is time barred.  The statute of limitations the court has previously found applicable to the facts of this case is found in 810 ILCS 5/3-118(a), which provides in pertinent part:

> [A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.

The only material dispute in this case is whether the Note was ever accelerated.  If it was, then the statutory limitations period is measured from the date of that acceleration.  If it was not, then the limitations period is measured form the date that each payment was due, thereby barring this action as to each payment that was due but not paid before July 19, 1996 (i.e. more than 6 years before this suit was filed on July 19, 2002).

The Note contained a provision captioned "Acceleration" which provided:

The Indebtedness shall immediately become due and payable, upon the appointment of a receiver or liquidator ... or upon the filing of a petition by or against the Undersigned under the provisions of any State of Federal insolvency law or ... the Bankruptcy Code or ... upon the making by the undersigned of an assignment for the benefit of its creditors. Payee with the consent of SBA or SBA as assignee is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the Indebtedness when due; (2) nonperformance by the Undersigned of any agreement with, or any condition imposed by, the development company or SBA; (3) failure of the Undersigned ... to disclose any material fact ...(4) the reorganization, merger or consolidation of the Undersigned without prior written consent of the development company and SBA (5) the sale of the Collateral, or any part of it or any interest in it; (6) the Undersigned's failure to account to Payee's or SBA's ... satisfaction; (7) the institution of any suit affecting the Undersigned deemed by SBA to affect adversely its interest hereunder ... ; (9) any change in the respective ownerships of the Undersigned; (1) if the Undersigned ... acquires directly or indirectly an ownership interest of ten or more percent in the development company; (11) any violation by the Undersigned of SBA regulations. Payee's or SBA's as assignee failure to exercise its rights under this paragraph shall not constitute a waiver thereof.

This action was filed in July of 2002, seeking recovery of the principle balance plus accrued interest in the amount of $662, 092.24, plus pre- and post-judgment interest and attorney fees.

I find that there is genuine dispute of material fact about whether the SBA or any holder of this Note accelerated the Note. The plaintiff has produced what it believes is proof that no acceleration occurred. The defendant says that the plaintiff's "proof" is based on incomplete documentation. While the defendant may not be able to produce the rest of the documentation, he is certainly entitled to state his understanding and relate what he relied on in reaching that understanding. Whether his testimony is credible or how much weight should be accorded his testimony are issues not properly resolved on summary judgment. Until there is a finding on these disputed facts, the court cannot state with any

certainty the legal effects of those facts.  See, <u>King v. NLSB</u>, 730 N.E.2d 1222, 1225 (Ill.App. 2000).

The third motion for summary judgment [#30] is therefore denied.  This case is set for a final pretrial conference on Thursday, August 18, 2005 at 10:30 a.m. via phone before Magistrate Judge John A. Gorman.

ENTER this 9th day of August, 2005.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE